FLINT CITY COUNCIL v STATE OF MICHIGAN

Docket No. 243029. Submitted on special motion docket September 20, 2002, at Lansing. Decided October 4, 2002, at 9:25 A.M.

The Flint City Council and others filed in the Ingham Circuit Court an appeal from the Governor's determination pursuant to the Local Government Fiscal Responsibility Act, MCL 141.1201 *et seq.*, that a serious problem existed in the financial operation of the city of Flint and required the appointment of an emergency financial manager to oversee the finances of the city. The plaintiffs also filed a complaint seeking the issuance of a preliminary injunction against the appointment of an emergency financial manager. Consistently with the act, the state Treasurer, upon passage of a senate resolution, had conducted a preliminary review of the city's financial condition and reported to the Governor that a serious financial problem existed. As required by the act upon the receipt of such a report, the Governor appointed a review team to conduct further assessment of the city's finances. The review team, in its report to the Governor, concluded that three conditions required by the act for state intervention existed and that an emergency financial manager should be appointed. In compliance with the act, the Governor notified city officials that he concurred with the review team's findings and that the city council could request a hearing before the Governor or his designee. A deputy director of the Department of Treasury, acting as the Governor's designee, conducted a hearing, following which the Governor's designee recommended the appointment of an emergency financial manager after concluding that the review team's determinations were supported by the evidence. The Governor notified the city that he was adopting the designee's recommendation. The circuit court, James R. Giddings, J., ruled that the act requires that the hearing before the Governor or his designee be an evidentiary, adversarial hearing in which the city could present evidence not available to the review team. The court remanded the matter to the Governor for a new hearing, denied the defendant's motion for a stay, and issued a preliminary injunction preventing the emergency financial manager from carrying out his duties. The state filed in the Court of Appeals an emergency application for leave to appeal. The Court of Appeals, Owens, P.J., Holbrook, Jr., and O'Connell, JJ., in an unpublished order entered

on August 20, 2002 (Docket No. 243029), remanded the matter to the circuit court for review as provided by the act, i.e., review of the existing record to determine whether the Governor's decision was supported by competent, material, and substantial evidence, or whether the decision was arbitrary or capricious or an unwarranted abuse of discretion. In its order, the Court of Appeals stated that mandatory injunctive relief against the Governor is not authorized under the act and is precluded by separation of powers principles, that the Legislature intended that the scope and procedure for the hearing before the Governor or his designee pursuant to the act was to be left to the Governor's discretion, and that local units of government lack standing to challenge a state statute on due process grounds. On remand, the circuit court ruled that the Governor's determination of a financial emergency in Flint was not supported by competent, material, or substantial evidence and was arbitrary and capricious and constituted an abuse of discretion. In its written opinion, the circuit court characterized portions of the Court of Appeals order as dicta and determined that the act obliged the Governor to conduct a hearing de novo at which the city could present whatever evidence it wished. The state moved in the Court of Appeals for peremptory reversal of the circuit court decision.

The Court of Appeals *held*:

1. The law of the case doctrine binds the circuit court to follow the prior determinations by the Court of Appeals that injunctive relief against the Governor is not available and the Legislature, by failing to specify any procedural requirements for the Governor's hearing under the act, intended that the scope and nature of the hearing be left to the Governor's discretion. In any event, the Court of Appeals determination that the scope and nature of the Governor's hearing is left to the Governor's discretion is correct.

2. The Governor's determination of a financial emergency in Flint was supported by competent, material, and substantial evidence on the whole record, was not arbitrary or capricious, and did not amount to a clear abuse or unwarranted exercise of discretion. The record of the hearing before the Governor's designee indicated that the city did not dispute the review team's findings. Those findings provided more than an adequate basis for the Governor's decision, which resulted from a deliberative process based on the standards set forth in the act.

Reversed.

Statutes — Local Government Fiscal Responsibility Act — Governor's Determination of Existence of Serious Financial Problem — Governor's Hearing.

    A hearing before the Governor or a designee of the Governor, which may be requested by a unit of local government that has been determined by the Governor to have a serious financial problem requiring state intervention pursuant to the Local Government Fiscal Responsibility Act, is to have a scope and procedural nature as determined by the Governor at the Governor's discretion (MCL 141.1215[2]).

*Howard & Howard Attorneys, P.C.* (by *Jon H. Kingsepp, Donald F. Tucker, James H. Geary, Melvin S. McWilliams,* and *Patrick M. McCarthy*), for the plaintiffs.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Treva R. Truesdale,* Assistant Attorney General, for the defendant.

Amicus Curiae:

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Clifford T. Flood, Cynthia B. Faulhaber,* and *Polly Ann Synk*), for Michigan Municipal League.

Before: OWENS, P.J., and HOLBROOK, JR., and O'CONNELL, JJ.

PER CURIAM. Following this Court's order reversing the circuit court order, in which the circuit court had granted plaintiffs' request for injunctive relief, and remanding the matter for review consistent with MCL 141.1217, defendant state of Michigan seeks peremptory reversal of the circuit court's decision on remand pursuant to MCR 7.211(C)(4). We agree that error is so manifest that an immediate reversal of the order should be granted without formal argument or sub-

mission, and reverse in this final decision entered pursuant to MCR 7.205(D)(2).

## I. FACTUAL BACKGROUND

### A. INTRODUCTION

This case arises in the context of the Local Government Fiscal Responsibility Act, MCL 141.1201 *et seq.*, and presents questions of first impression. Senate Resolution 184, 2002 Journal of the Senate 576 (No. 23, March 13, 2002), sponsored by Senator Robert L. Emerson, the state senator for the district that includes the city of Flint, sought a preliminary review by the state treasurer of the city of Flint's financial condition pursuant to MCL 141.1212(1) of the act. At the conclusion of his review, the state Treasurer reported to the Governor that a serious financial problem existed in the city of Flint. As required by MCL 141.1213(1)(b) when such a report is received, the Governor appointed a financial review team to conduct an assessment of the city's fiscal situation.

### B. THE FINANCIAL REVIEW TEAM'S REPORT

The review team found that the city's general fund deficit had doubled from $13 million to $26 million in the fiscal year ending June 30, 2001. In addition, the city had borrowed money from special purpose funds to supplement the general fund to a point where the other funds were not sufficient to permit the performance of major functions such as street repair, water and sewer services, and maintenance or replacement of equipment. The financial audit reports for the last three fiscal years showed that the city's actual revenues and expenditures varied significantly from the

budgeted revenues and expenditures, rendering the adopted budget for those years "meaningless as a financial management tool." The review team concluded that city officials demonstrated an inability "to accurately monitor revenues and expenditures throughout a given fiscal year and to amend city budgets accordingly." The 2000 and 2001 financial audit reports indicated that "the city failed to maintain an accurate and timely general ledger, failed to perform timely reconciliations of bank balances to the general ledger, and incurred an excess of expenditures over revenues."

The city still owed the state approximately $12 million in uncollected taxes for the years 1986 through 1991. It had also failed to timely file annual financial reports with the Department of Treasury, as it was required to do by statute, for the past five fiscal years. The audit reports were due on December 30 of each year and were sometimes not filed until August or October of the following year. The review team expressed concern that the proposed budget for fiscal year 2003 did not address the accumulated general fund deficit. Although a deficit elimination plan was approved by the Department of Treasury for fiscal year 2001, the city had not adhered to it. The review team report noted that "there was a surprising difference of opinion among city officials regarding what the general fund deficit will be for the current fiscal year ending on June 30th [2002]." The report concluded that the fact that "city officials could not even agree upon the magnitude of the accumulated deficit, let alone upon a credible plan for its elimination, was troubling and suggestive of an inability to resolve the serious financial problem confronting the city."

Although city officials had proposed issuing financial stabilization bonds, the report opined that "the capacity of the city to issue further debt is substantially limited." In order to finance such bonds, the city would most likely have to pledge future state revenue sharing proceeds; however, because seventy-five percent of these anticipated funds had already been pledged for existing debt and the city expected that it would have to issue additional obligations to meet state and federal drinking water requirements, further pledging of that revenue source would be forestalled and the issuance of such bonds was "unlikely." The report also noted that the city was currently involved in arbitration proceedings regarding its collective bargaining agreement with police officers, and that city officials had failed to budget for any salary increases that may be awarded; the award "may be retroactive to 1998 and any award greater than zero will immediately add to the existing deficit."

The report concluded that three of the conditions for state intervention set forth in MCL 141.1214(2) existed: that the city failed to eliminate an existing deficit within the two-year period preceding the end of the current fiscal year [MCL 141.1241(2)(e)]; that the city was delinquent for more than thirty days in remitting $12 million in tax payments to the state for the years 1986 through 1991 [MCL 141.1214(2)(b)(ii)]; and that the general fund deficit for fiscal year 2002 is likely to exceed ten percent of the general fund revenues for that year [MCL 141.1214(2)(f)]. The review team determined, in accordance with MCL 141.1214(3)(c), that a local government financial emergency existed "because no satisfactory plan exists to resolve the serious financial problem," and

recommended that the Governor appoint an emergency financial manager pursuant to MCL 141.1218.

### C. THE GOVERNOR'S REVIEW HEARING

On May 22, 2002, as required by MCL 141.1215(2),[1] the Governor notified city officials in writing that he concurred in the review team's finding that a financial emergency existed. The notice informed the officials of their right to request a hearing. The acting mayor of Flint requested a hearing on the determination, which was held on June 24, 2002.

As permitted by MCL 141.1215(2), the Governor's designee, Julie Croll, deputy director of the Department of Treasury, served as hearing officer. Ms. Croll began the proceedings by informing the parties that the hearing was "not . . . an original fact-finding situation," but was in the nature of an appeal, and that the standard of review would involve the determination whether the review team's findings were supported by

---

[1] MCL 141.1215(2) provides:

If the governor determines pursuant to subsection (1) that a financial emergency exists, the governor shall provide the governing body and chief administrative officer of the local unit with a written notification of the determination, findings of fact utilized as the basis upon which this determination was made, a concise and explicit statement of the underlying facts supporting the factual findings, and notice that the chief administrative officer or the governing body of the local government has 10 days after the date of this notification to request a hearing conducted by the governor or the governor's designate. Following the hearing, or if no hearing is requested following the expiration of the deadline by which a hearing may be requested, the governor shall either confirm or revoke, in writing, the determination of the existence of a local financial emergency. If confirmed, the governor shall provide a written report of the findings of fact of the continuing or newly developed conditions or events providing a basis for the confirmation of a local financial emergency, and a concise and explicit statement of the underlying facts supporting these factual findings.

the evidence or whether the findings were arbitrary or capricious. At the hearing, the city's representatives did not dispute the findings of the review team, and acknowledged that there was a need for immediate action. However, they claimed that since the review team's report, they had made substantial progress toward resolving their financial problems.

On July 2, 2002, Ms. Croll issued her report to the Governor. She reviewed the evidence and arguments presented by the city, but noted that "any efforts that may have taken place since the review team submitted its report . . . are outside the scope of review." The hearing officer concluded that the review team's determination that a financial emergency exists in the city was supported by the evidence and recommended the appointment of an emergency financial manager.

On July 3, 2002, the Governor notified Flint city officials in writing that he was adopting the hearing officer's conclusions and directing that an emergency financial manager be appointed. The specific findings that were cited as supporting this action were that the city's general fund deficit doubled from $13 million to $26 million in one year, the city's cash reserves had been depleted by $74 million over three years, audit reports during the last three fiscal years reflected the city's inability to accurately budget revenues and expenditures, and the city's inability to adhere to its current deficit elimination plan. Pursuant to the Governor's directive, Edward J. Kurtz was appointed on July 8, 2002, as the city's emergency financial manager.

D. THE CITY'S APPEAL TO THE CIRCUIT COURT

On July 9, 2002, the city filed an appeal and complaint in the Ingham Circuit Court, along with a motion requesting show cause order and a request for issuance of a preliminary injunction against the appointment of the emergency financial manager. Ingham Circuit Judge James R. Giddings, in a ruling from the bench, concluded that the Governor violated the statute because the Legislature intended that the Governor's hearing under MCL 141.1215(2) be an evidentiary, adversarial hearing using the preponderance of the evidence standard, in which the city could present evidence not available to the financial review team. On July 22, 2002, the court amended its order to include remand of the matter to the Governor with instructions that the Governor provide the city with a new hearing of the type outlined in its previous ruling and without limitation on the city's right to present evidence. The court stated that it would decline to rule on plaintiffs' claim that the city was denied due process. On July 29, 2002, the court denied defendant's motion for a stay and entered a preliminary injunction enjoining the financial manager from fulfilling his appointed duties.

Defendant filed an emergency application for leave to appeal to this Court and motion for a stay. In our order entered August 20, 2002, we stated:

> In lieu of granting the application for leave to appeal, the Court orders pursuant to MCR 7.216(A)(1) that the order appealed from is VACATED. "It is clear that separation of powers principles, Const 1963, art 3, § 2, preclude mandatory injunctive relief . . . against the Governor." *Straus v Governor*, 459 Mich 526, 532; 592 NW2d 53 (1999); see also *Musselman v Governor*, 200 Mich App 656, 662; 505 NW2d 288 (1995) ("mandamus will not lie to compel the

Governor to act, regardless of whether the actions sought to be compelled are discretionary or ministerial."). Because the court's order in this case required the Governor to take specific, court-ordered action, it was in the nature of mandamus and in violation of the Michigan constitution. Moreover, the Local Government Fiscal Responsibility Act does not permit a circuit court to grant injunctive relief, and there is no other statute or legal basis for a finding that the court possesses such authority.

This matter does not fall within a circuit court's original jurisdiction under MCL 600.605, since MCL 141.1217 of the Local Government Fiscal Responsibility Act clearly provides that the circuit court proceeding is in the nature of an appeal. While MCL 600.605 and Const 1963, art 6, §§ 13 and 28 provide circuit courts with appellate jurisdiction over decisions of inferior courts and administrative tribunals, the Governor's determination that a financial emergency exists under the Local Government Fiscal Responsibility Act fits into neither of these categories. Finally, MCR 7.105(G) applies only to administrative agencies and their decisions following contested case proceedings. Under MCR 7.105(A), the Governor is expressly excluded from the definition of "agency," and "contested case" is defined as an agency decision. There was simply no legal authorization for the action taken in this case.

In addition, there is no basis for a finding that defendant violated the act. Although MCL 141.1215(2) provides for a hearing, it does not specify what kind of hearing is required. This fact compels the conclusion that the Legislature left the scope of the hearing and other procedural matters to be determined by the Governor in his discretion. While subsection 15(2) refers to "newly developed conditions or events," this reference is expressly limited to those conditions or events *supporting* the finding that a local financial emergency exists. Thus, the statute does not encompass any right to present evidence of last-ditch efforts by city officials to avoid the consequences of years of mismanagement. Regardless of the court's statement in its order that it was not addressing constitutional issues, the order necessarily granted plaintiffs the relief they sought in connection with their claim that the hearing vio-

lated due process. It is well established that local units of government lack standing to challenge a state statute on due process grounds. *Kent Co Aeronautics Bd v Dep't of State Police*, 239 Mich App 563; 609 NW2d 593 (2000). Accordingly, plaintiffs were clearly not entitled to the relief granted.

Therefore, the matter is remanded to the circuit court for review consistent with MCL 141.1217, i.e., a review of the *existing* record to determine whether the Governor's decision was supported by competent, material and substantial evidence, or whether the decision was arbitrary, capricious, or an unwarranted abuse of discretion. The circuit court shall issue its opinion or order regarding this matter within fourteen days of the clerk's certification of this order. Jurisdiction is retained. [Emphasis in original.]

In light of the decision to vacate the lower court's order, the motion for stay was denied as moot.

On remand, the circuit court issued an order on September 3, 2002, in which it found that the "Official Record" of the proceedings at the Governor's hearing was "incomplete" and that the court's review indicated that the Governor's determination that a financial emergency exists in the City of Flint was not supported by competent, material, or substantial evidence on the whole record and that the determination was arbitrary and capricious and constituted an abusive and unwarranted exercise of discretion. The court subsequently issued a written opinion in which it characterized portions of this Court's previous order as "dicta" and reached the same result as it had initially, concluding that the Governor was obliged to conduct de novo a hearing at which the city could present whatever evidence it wished. Defendant moved for peremptory reversal of the decision.

## II. STANDARD OF REVIEW

This case involves questions of statutory interpretation, which we review de novo. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998).

### III. ANALYSIS

#### A. THE CIRCUIT COURT'S ACTIONS ON REMAND

It is well established that under the law-of-the-case doctrine, a circuit court may not take action on remand that is inconsistent with the judgment or order of an appellate court. *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000); *Sokel v Nickoli*, 356 Mich 460, 465; 97 NW2d 1 (1959); *Driver v Hanley (After Remand)*, 226 Mich App 558, 565; 575 NW2d 31 (1997). "Thus, a question of law decided by an appellate court will not be decided differently on remand" provided the facts of the case remain the same. *Driver, supra.* Contrary to plaintiffs' assertions on appeal, the relevant facts of this case have not changed since our prior order.

In that order, we determined as a matter of law that the Legislature, by failing to specify any procedural requirements for the Governor's hearing under MCL 141.1215(2), intended that the scope and nature of the hearing was to be left to the Governor's discretion, and that the reference to "newly developed conditions or events" in that subsection is "expressly limited to those conditions or events *supporting* the finding that a local financial emergency exists." Thus, we reversed the circuit court's ruling that the Governor violated the act, and held that MCL 141.1215(2)

limited the court's review to the record as it was presented to the hearing officer, who specifically declined to consider actions taken by city officials after the review team's report was filed. These statements were not dicta, but were necessary to our decision outlining the parameters of circuit court review under MCL 141.1217. Not only did the review provided for in the statute not include the authority to issue injunctive relief, it also did not include the authority to dictate the procedure to be utilized in connection with the Governor's review hearing under MCL 141.1215(2). Thus, because the holdings were clearly "necessary" to the decision in light of the lower court's attempts to impose a set of procedural rules on the Governor's hearing, Judge Giddings was not free to ignore them.

### B. THE STATUTORY FRAMEWORK

We begin by observing that the Local Government Fiscal Responsibility Act is an exercise of the state's authority over its political subdivisions. A municipal corporation's "existence is entirely dependent on the legislation that created it, and the Legislature that may also destroy it." *Oakland Co Bd of Co Rd Comm'rs, supra* at 609. As has been stated many times, the Legislature's authority in this regard is absolute except with regard to certain express constitutional grants and limitations of power. *Id.*; *Kent Co Aeronautics Bd, supra* at 580; see also *Williams v Mayor & City Council of Baltimore*, 289 US 36, 40; 53 S Ct 431; 77 L Ed 1015 (1933). As we stated in our previous order in this case, the city has no standing to raise a claim that the act deprived it of due process. *Kent Co Aeronautics Bd, supra* at 580. Conse-

quently, the Legislature had no obligation to provide the city with any sort of notice or hearing at all. The fact that it did provide for notice and hearing in this act, however, requires us to determine what those provisions entail.

Although the Supreme Court has held that the Legislature must provide an administrative agency with standards for the exercise of the power delegated to it, *Blank v Dep't of Corrections*, 462 Mich 103, 124; 611 NW2d 530 (2000), we are not dealing here with an administrative agency; rather, this case involves a decision by the chief executive officer of the state, who stands on an equal level with the Legislature and the judiciary. "The Governor's power is limited only by constitutional provisions that would inhibit the Legislature itself." *Straus, supra* at 534. It is further well established that while the Legislature can authorize the exercise of executive power, it cannot place conditions on the exercise of that authority without violating the constitutional principle of separation of powers. *Blank, supra* at 120 (KELLY, J.) and 147 (MARKMAN, J.). Thus, we conclude that the fact that the Legislature did not attempt to impose procedural requirements with regard to MCL 141.1215(2) indicates its intent to leave the scope of review to the Governor's discretion.

Certainly, had the Governor decided to conduct de novo a hearing, it would have been within his authority to do so. However, the Governor determined, in his discretion, that the hearing would be conducted as an appeal of the financial review team's factual findings, a procedural stance which, even in the context of the completely unique process provided for in this act, is consistent with the review procedures fol-

lowed in virtually every administrative agency in this state in which the initial findings of fact by a hearing officer are reviewed on the basis of the established record by a board or commission whose decision subsequently may be appealed to the circuit court. We also note that in the preamble to the act, the Legislature indicated that it was providing "for a review and appeal process," language that, while not dispositive, is also consistent with the standard administrative review process and the commonly understood usage of the term "appeal."

Amicus curiae Michigan Municipal League contends that the Legislature must have intended that the first level of review involve a hearing de novo because it used the word "hearing" in MCL 141.1215 rather than "appeal," as it did in MCL 141.1217 in reference to proceedings in the circuit court. While this argument points out a valid distinction between the two provisions, we are not persuaded that it compels a different result. The term "appeal" has always been confined in its use to references to judicial review or quasi-judicial administrative review proceedings, a category into which the Governor's hearing does not fit in light of the fact that the Governor is expressly excluded from the definition of "agency" under the Administrative Procedures Act. MCL 24.203(2); see also MCR 7.105(A)(1). Hence, the Legislature's failure to specify that the Governor's review under MCL 141.1215(2) was in the nature of an appeal does not compel the conclusion that any review hearing be conducted under a de novo standard. On the contrary, as we have stated, in light of separation of powers principles, the absence of any limits on the scope of the Governor's review indicates not that the review

would be unlimited, but that the Legislature intended that the parameters of the review would be left to the Governor to determine.

Nor does the fact that the Legislature used the term "hearing" provide any insight into the *type* of hearing to be provided; plaintiffs were given notice[2] and an opportunity to be heard, and were free to point out any errors or omissions in the review team's findings. In addition, they have never claimed to have been restricted in any way in terms of their presentation to the financial review team. Thus, even if the city had standing to claim that its due process rights were violated by the review that was accorded in this case, which, as we have noted, it does not (*Oakland Co Bd of Co Rd Comm'rs, supra* at 609-610, and *Kent Co Aeronautics Bd, supra* at 581), the hearing conducted in this case did not contravene any constitutional requirements. See *Rental Property Owners Ass'n v Grand Rapids*, 455 Mich 246, 271; 566 Mich 514 (1997).

The city contends that because the reference in MCL 141.1215(2) to "continuing or newly developed conditions or events" is phrased in the present tense, the hearing must be conducted on a de novo basis and include a right on the part of city officials to

---

[2] The city claims for the first time on appeal, and without citation of authority, that the entire proceedings were void because it was not notified in writing by the state treasurer of his intent to conduct a review, as required by MCL 141.1212(1). Because this issue was not raised during the proceedings before the Governor's designee, we decline to address it, particularly in view of the fact that it is not disputed that the city had actual notice of the state's actions. Furthermore, this Court will not search for authority to support a party's position, and the failure to cite authority in support of an issue results in its being deemed abandoned on appeal. *Davenport v Grosse Pointe Farms Bd of Zoning Appeals*, 210 Mich App 400, 405; 534 NW2d 143 (1995).

present evidence of their recent efforts to remedy the local financial situation. This argument, however, fails to take into account the fact that any such "conditions or events," regardless of whether they are "continuing or newly developed," are expressly confined by the plain language of the statute to those *supporting* the confirmation of the existence of a local financial emergency. The city's interpretation of the statute violates the well-established rule that courts should avoid any construction that would render statutory language nugatory. *McAuley v General Motors Corp,* 457 Mich 513, 518; 578 NW2d 282 (1998); *Gebhardt v O'Rourke,* 444 Mich 535, 542; 510 NW2d 900 (1994). Thus, we find no reason to alter our previous holding that "the statute does not encompass any right to present evidence of last-ditch efforts by city officials to avoid the consequences of years of mismanagement." This is particularly true in light of the purpose of the act, which is to protect our citizens from the potentially disastrous consequences of long-term mismanagement of municipal funds by providing local officials with a powerful incentive to meet standards of fiscal responsibility *before* state intervention becomes necessary. See MCL 141.1202. Consequently, while the Governor may, in his discretion, consider evidence of late efforts by a municipality to remedy its financial situation, there is no basis in the statute for finding that a municipality has a right to have such evidence taken into account.

As illustrated by the lower court's opinion on remand, virtually all the actions taken by the city to correct its financial problems occurred after the passage of Senate Resolution 184. At the hearing, the city, both in writing and on the record, did not dis-

pute the financial review team's findings, but stated, in its written response to the review team's report, that the city had "begun the task of amending its Deficit Elimination Plan to fully address the remaining deficit." Frederick Headen, a member of the financial review team who presented its findings at the hearing, acknowledged the city's efforts, but concluded that "[n]othing in the recent history of the city . . . suggests that whatever progress has occurred would have taken place but for the threat of state intervention . . . ." The hearing officer determined that "[m]uch, if not all, of the testimony and material offered by the City pertained to what it intends to do to solve its financial problem." To dismiss the significance of the previous years of profound mismanagement in light of these eleventh-hour efforts would seriously undermine the Legislature's goal of motivating local municipalities to take prompt and decisive action to prevent the occurrence of serious financial problems. That the city now attempts on appeal to disclaim its actions at the hearing and challenge the review team's conclusions does not affect our analysis, because we are not at liberty to make new factual findings. Furthermore, a party may not seek redress on appeal on the basis of a position contrary to that it took in the proceedings under review. *Phinney v Perlmutter*, 222 Mich App 513, 544; 564 NW2d 532 (1997); *Living Alternatives for the Developmentally Disabled, Inc v Dep't of Mental Health*, 207 Mich App 482, 484; 525 NW2d 466 (1994).

Finally, we find the cases relied on by the city to be distinguishable on their facts. In *Dullam v Willson*, 53 Mich 392; 19 NW 112 (1884), the Governor's removal of a public official from office was overruled because

the constitution in force at the time did not give the Governor removal powers, and the subject of the executive action in that case was an individual, not a municipality. In *Teasel v Dep't of Mental Health*, 419 Mich 390; 355 NW2d 75 (1984), the issue related to judicial oversight of agencies; however, as we have repeatedly stated, the Governor is not an agency.

C. THE GOVERNOR'S DECISION

The circuit court's order and opinion on remand found that the Governor's decision was not supported by any evidence and was arbitrary and an abuse of discretion because the Governor failed to conduct his review according to the procedures dictated by the circuit court. We have already explained the errors inherent in this holding and now proceed to a proper analysis under MCL 141.1217.

The statute provides that the reviewing "court shall not set aside a determination of the governor unless it finds that the determination is either of the following: (a) Not supported by competent, material, and substantial evidence on the whole record[; or] (b) Arbitrary, capricious, or clearly an abuse or unwarranted exercise of discretion." Substantial evidence has been defined as that evidence which reasonable minds would accept as adequate to support a decision. It is more than a mere scintilla but less than a preponderance of the evidence. *In re Payne*, 444 Mich 679, 692; 514 NW2d 121 (1994); *In re Kurzyniec Estate*, 207 Mich App 531, 537; 526 NW2d 191 (1994). The Supreme Court set forth the accepted definitions of "arbitrary" and "capricious" in *Goolsby v Detroit*, 419 Mich 651, 678; 358 NW2d 856 (1984):

"Arbitrary is: " '[Without] adequate determining principle
. . . Fixed or arrived at through an exercise of will or by
caprice, without consideration or adjustment with reference
to principles, circumstances, or significance, . . . decisive
but unreasoned.' "

"Capricious is: " '[Apt] to change suddenly; freakish; [or]
whimsical. . . .' " [*Id.*, quoting *United States v Carmack*, 329
US 230, 243; 67 S Ct 252; 91 L Ed 209 (1946), and *Bundo v
Walled Lake*, 395 Mich 679, 703, n 17; 238 NW2d 154 (1976).]

Finally, an abuse of discretion "occurs only when the
result is 'so palpably and grossly violative of fact and
logic that it evidences not the exercise of will but per-
versity of will, not the exercise of judgment but defi-
ance thereof, not the exercise of reason but rather of
passion or bias.' " *Alken-Ziegler, Inc v Waterbury
Headers Corp*, 461 Mich 219, 227-228; 600 NW2d 638
(1999), quoting *Marrs v Bd of Medicine*, 422 Mich
688, 694; 375 NW2d 321 (1985), and *Spalding v Spald-
ing*, 355 Mich 382, 384-385; 94 NW2d 810 (1959).

According to the record of the hearing before the
Governor's designee, and despite plaintiffs' assertions
to the contrary on appeal, the city, both in writing
and on the record, stated that it did not dispute the
financial review team's findings. We conclude that
these findings provide more than an adequate basis
for the Governor's decision. Further, we believe that
the Governor's decision, which was the culmination
of a thorough and deliberative process based on the
standards set forth in the act, was not arbitrary or
capricious or an abusive or unwarranted exercise of
discretion.

## IV. CONCLUSION

In sum, we find that, at their core, the city's argu-
ments are simply an attempt to assert that it was

denied due process, a claim that it lacks standing to bring. *Kent Co Aeronautics Bd, supra* at 581. There is likewise no language anywhere in the act that would support a finding that the city has a right to present evidence at the hearing provided by MCL 141.1215(2) that was not available to the financial review team. As we have held, the Governor's decision was amply supported by the undisputed record. Accordingly, the lower court's opinion and order are reversed, and the Governor's decision is affirmed.

Reversed. No costs to plaintiffs, a public question being involved.