# STATE OF MICHIGAN

# COURT OF APPEALS

THEODORE CADWELL and GLENN QUAKER

UNPUBLISHED
May 28, 2015

Plaintiffs-Appellees,

v

No. 318430
Wayne Circuit Court
LC No. 10-012583-NO

CITY OF HIGHLAND PARK,

Defendant-Appellant.

Before: TALBOT, C.J., and CAVANAGH and METER, JJ.

PER CURIAM.

In this claim brought, in part, under the whistleblower protection act (WPA), MCL 15.361 *et seq.*, defendant Highland Park appeals as of right the judgment of the trial court, after a jury trial, awarding damages to plaintiffs Theodore Cadwell and Glenn Quaker. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Defendant first argues that the trial court erred in denying defendant's summary disposition motion concerning plaintiff's WPA claim because no "protected activity" occurred. We disagree. A grant or denial of summary disposition is reviewed de novo on appeal. *Walters v Nadell*, 481 Mich 377, 381; 751 NW2d 431 (2008). As the Michigan Supreme Court explained in *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999):

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.

"Issues of statutory construction involve questions of law that [this Court] review[s] de novo." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 271; 826 NW2d 519 (2012).

MCL 15.362 states:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions,

-1-

location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

From this statutory language, the Michigan Supreme Court has identified three elements that establish a violation of the WPA:

> (1) The employee was engaged in one of the protected activities listed in the provision.

> (2) [T]he employee was discharged, threatened, or otherwise discriminated against regarding his or her compensation, terms, conditions, location, or privileges of employment.

> (3) A causal connection exists between the employee's protected activity and the employer's act of discharging, threatening, or otherwise discriminating against the employee. [*Wurtz v Beecher Metro Dist*, 495 Mich 242, 251-252; 848 NW2d 121 (2014).]

"The protected activities listed in the act consist of reporting or being about to report a violation of a law, regulation, or rule, or being requested by a public body to participate in an investigation, hearing, inquiry, or court action." *Id*. at 251 n 13; see also MCL 15.362. Where the protected activity is the act of reporting a violation of law, that report must be made to a "public body" as that term is defined in the WPA. MCL 15.362; see also *Brown v Mayor of Detroit*, 478 Mich 589, 594; 734 NW2d 514 (2007) ("[t]he WPA protects an employee who reports or is about to report a violation or suspected violation of a law or regulation to *a public body*"). Pursuant to MCL 15.361(d), a "public body" includes:

> (*i*) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of state government.

> (*ii*) An agency, board, commission, council, member, or employee of the legislative branch of state government.

> (*iii*) A county, city, township, village, intercounty, intercity, or regional governing body, a council, school district, special district, or municipal corporation, or a board, department, commission, council, agency, or any member or employee thereof.

> (*iv*) Any other body which is created by state or local authority or which is primarily funded by or through state or local authority, or any member or employee of that body.

(*v*) A law enforcement agency or any member or employee of a law enforcement agency.

(*vi*) The judiciary and any member or employee of the judiciary.

"The language of the WPA does not provide that this public body must be an outside agency or higher authority. There is no condition in the statute that an employee must report wrongdoing to an outside agency or higher authority to be protected by the WPA." *Brown*, 478 Mich at 594. Thus, "[i]t does not matter if the public body to which the suspected violations were reported was also the employee's employer." *Id*. at 595.

Here, Quaker, the deputy chief of police for defendant's police department, reported a suspected violation of criminal laws by Gregory Yopp (Gregory), the son of defendant's mayor, Hubert Yopp (Mayor Yopp), to Cadwell, who was at that time the chief of police for defendant's police department. Because the definition of a "public body" includes "[a] law enforcement agency *or any member or employee of a law enforcement agency*[,]" MCL 15.361(d)(*v*) (emphasis supplied), Quaker's act was a protected activity. See *Brown*, 478 Mich at 595 (where a plaintiff reported suspected violations to the chief of police, he had engaged in a protected activity under the WPA). Thus, as it pertained to Quaker, the trial court correctly denied the motion.

With regard to Cadwell, the trial court ruled that a question of fact existed because Cadwell held a supervisory role in the police department and, accordingly, "would have had some oversight of the operation and in reporting the arrest to the Wayne County Prosecutor." Again, Cadwell was the chief of police at the time of the arrest. Lynesha Jones testified that she was the officer in charge of the investigation into Gregory's arrest and that she forwarded the case to the Wayne County Prosecutor. According to Jones, forwarding the case was solely her responsibility. While acknowledging that she worked under Quaker and Cadwell, Jones denied having any conversations with either regarding Gregory's prosecution. However, evidence was submitted creating a question of fact regarding whether Cadwell participated in a protected activity under the WPA. Cadwell testified that Mayor Yopp

> made an indication that because the narcotics – there was not a large amount of narcotics seized, that *we* should not have submitted that information to the Wayne County Prosecutor, but that *we* should have handled that in-house. And *we* explained to him, you know, as an Investigator he knows, when you do an Investigator's write-up, you put all the facts in and the Prosecutor, who's writing the Warrant, makes that determination. You know, we can't just, arbitrarily not submit evidence or indications of evidence. [Emphasis added.]

Viewed in the light most favorable to plaintiffs, Cadwell's testimony supports a reasonable inference that he was involved in the submission to the Wayne County Prosecutor of the evidence concerning Gregory's suspected violation of criminal laws. Although Cadwell's use of the term "we" could arguably be understood as referring to the police department generally, it could also reasonably be understood to express that he was involved at least in a supervisory role in submitting the evidence to the prosecutor. Cadwell's testimony that "we" explained to Mayor Yopp the reason why the information was submitted to the prosecutor lends further support to

the view that Cadwell had some level of involvement in the decision to forward the information to the prosecutor.

Further, MCL 15.362 does not require the report to be made by the individual bringing the WPA claim. The statute specifically prohibits an employer from taking retaliatory action against an employee "because the employee, *or a person acting on behalf of the employee*, reports . . . a violation or a suspected violation of law . . . to a public body . . . ." MCL 15.362 (emphasis supplied). It is undisputed that Jones was the officer who forwarded Gregory's case, along with the evidence against him, to the Wayne County Prosecutor's Office. However, Cadwell's testimony quoted above supports a reasonable inference that he was involved in the decision to forward the information. Certainly, the Wayne County Prosecutor's Office would be a "public body" under the WPA. See MCL 15.361(d); see also *Ernsting v Ave Maria College*, 274 Mich App 506, 515-518; 736 NW2d 574 (2007) (the federal Department of Education is a public body under MCL 15.361(d)(*v*) because it has the "power to conduct civil and criminal investigations in order to enforce the laws under its purview"). Plaintiffs presented evidence that they reported suspected illegal activity to a public body, and thus, defendant was not entitled to summary disposition with regard to plaintiffs' claims under the WPA.

Defendant next argues that the trial court erred when it denied defendant's motions for a directed verdict and for judgment notwithstanding the verdict (JNOV) on the same underlying issue discussed above, i.e., whether plaintiffs engaged in a protected activity. We disagree. A trial court's decision on a motion for a directed verdict or JNOV is reviewed de novo. *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 131; 666 NW2d 186 (2003). This Court must "'review the evidence and all legitimate inferences in the light most favorable to the nonmoving party.'" *Id*., quoting *Wilkinson v Lee*, 463 Mich 388, 391; 617 NW2d 305 (2000). The motion "should be granted only if the evidence viewed in this light fails to establish a claim as a matter of law." *Sniecinski*, 469 Mich at 131.

Defendant first moved for a directed verdict after plaintiffs concluded their opening statement. As this Court stated in *Fenton Country House, Inc v Auto-Owners Ins Co*, 63 Mich App 445, 448-449; 234 NW2d 559 (1975):

> As a starting point, this Court must recognize that this method of disallowing a party from presenting its case to the jury is a limited and disfavored one. That view of such directed verdicts has developed because the opening statement is only for the jury's benefit, and must be made using simple language a jury likely will understand. Only the very general nature of the case need be described. [Citations omitted.]

"The specific test to be used in examining the opening statement is whether it encompassed all of the ultimate facts proposed to be proven and essential to plaintiff's . . . cause of action." *Id*. at 449 (quotation marks and citation omitted). The test is a "very loose test which must be used to judge the offer of proof found in the opening statement . . . ." *Id*.

Defendant argued that a directed verdict was warranted because plaintiffs' opening statement made no reference to any evidence that would satisfy the first element of a WPA claim—the existence of a protected activity. Defendant's argument centers on a statement by

-4-

plaintiffs' attorney in which he summarized the case as one in which defendant retaliated against plaintiffs for failing to prevent Gregory's prosecution. However, defendant ignores the rest of plaintiffs' opening statement. Plaintiffs' attorney asserted that Quaker reported Gregory's arrest to Cadwell. Plaintiffs' attorney also asserted that Gregory's case was forwarded to the Wayne County Prosecutor's Office. As was discussed in the previous issue, these acts are protected activities under the WPA. Accordingly, a directed verdict was not warranted on the basis of plaintiffs' opening statement. See *id*. at 448-449.

Defendant moved for a directed verdict on the fourth day of trial, arguing that no evidence had been presented that demonstrated that either plaintiff participated in a protected activity under the WPA. The trial court denied the motion. Defendant renewed the motion the following day, and it was again denied. Following trial, defendant moved for a JNOV, again arguing that no evidence of a protected activity was presented at trial. This motion was also denied. On appeal, defendant argues that the trial court erred because no evidence was presented demonstrating that plaintiffs participated in a protected activity. However, evidence had been presented that Quaker reported Gregory's arrest to Cadwell. Cadwell testified at trial that he reviewed the investigator's report that was prepared and sent to the Wayne County Prosecutor's Office and that he directed Jones to forward the case to the prosecutor, and Quaker testified that Jones's investigative report was prepared under his supervision. In accordance with our analysis above, this evidence demonstrated that plaintiffs participated in a protected activity under the WPA—that being reporting illegal activity to a public body. Accordingly, the trial court correctly denied defendant's motions for a directed verdict and JNOV.

Defendant next argues that the trial court erred when it denied defendant's motion for remittitur or a new trial regarding damages. "The grant or denial of a motion for a new trial or remittitur is reviewed for an abuse of discretion." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 546; 854 NW2d 152 (2014), lv granted ___ Mich ___; 860 NW2d 927 (2015). "When reviewing such motions, this Court views the evidence in the light most favorable to the nonmoving party, giving due deference to the trial court's decision because of its ability to evaluate the credibility of the testimony and evidence presented to the jury." *Id*. A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Radeljak v DaimlerChrysler Corp*, 475 Mich 598, 603; 719 NW2d 40 (2006).

A trial court may grant a new trial under MCR 2.611(A)(1)(e) if "[a] verdict or decision [is] against the great weight of the evidence or contrary to law." If competent evidence exists to support a jury's verdict, the verdict should not be set aside simply because the trial court would weigh the evidence differently. *Bd of Co Rd Comm'rs of Kalamazoo Co v Bera*, 373 Mich 310, 314; 129 NW2d 427 (1964). The motion should be granted only if the jury's verdict is "manifestly against the clear weight of the evidence." *Ellsworth v Hotel Corp of America*, 236 Mich App 185, 194; 600 NW2d 129 (1999) (quotation marks and citation omitted). The verdict must be upheld if there is any interpretation of the evidence that logically explains the jury's findings. *Allard v State Farm Ins Co*, 271 Mich App 394, 407; 722 NW2d 268 (2006).

Remittitur is governed by MCR 2.611(E), which states, in part:

(1) If the court finds that the only error in the trial is the inadequacy or excessiveness of the verdict, it may deny a motion for new trial on condition that

within 14 days the nonmoving party consent in writing to the entry of judgment in an amount found by the court to be the lowest (if the verdict was inadequate) or highest (if the verdict was excessive) amount the evidence will support.

To determine whether remittitur is appropriate, "a trial court must decide whether the jury award was supported by the evidence." *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 462; 750 NW2d 615 (2008). This Court described the factors to be considered in *Freed v Salas*, 286 Mich App 300, 334; 780 NW2d 844 (2009):

> (1) whether the verdict was the result of improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact; (2) whether the verdict was within the limits of what reasonable minds would deem just compensation for the injury sustained; and (3) whether the amount actually awarded is comparable with awards in similar cases both within the state and in other jurisdictions.

The WPA allows a plaintiff to recover "actual damages . . . ." MCL 15.363(1). Damages for emotional distress are encompassed within this term. *Phinney v Perlmutter*, 222 Mich App 513, 559-560; 564 NW2d 532 (1997), abrogated in part on other grounds by *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263; 696 NW2d 646 (2005), amended 473 Mich 1205 (2005). "A plaintiff asserting a cause of action has the burden of proving damages with reasonable certainty, and damages predicated on speculation and conjecture are not recoverable." *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 96; 706 NW2d 843 (2005). Uncertainty regarding the fact of damages is fatal to recovery, while uncertainty regarding only the amount of damages is not. *Wolverine Upholstery Co v Ammerman*, 1 Mich App 235, 244; 135 NW2d 572 (1965).

Defendant first argues that the jury's award of damages for future lost wages was not supported by the evidence. Defendant's argument appears to be that this award was improper because no documentary evidence was admitted to support it. Defendant offers no authority for such a requirement and, accordingly, has abandoned the issue. *Flint City Council v Michigan*, 253 Mich App 378, 393 n 2; 655 NW2d 604 (2002) ("this Court will not search for authority to support a party's position, and the failure to cite authority in support of an issue results in its being deemed abandoned on appeal"). Further, as defendant acknowledges, both plaintiffs testified that they would have remained employed for an additional seven years had they not been laid off and that they were unable to obtain employment. Plaintiffs' testimony established the fact of damages due to future lost wages. Defendant's argument is without merit.

Defendant also argues that the trial court abused its discretion when it denied the motion for a new trial or remittitur because the jury's award of $500,000 to each plaintiff for emotional distress was not supported by the evidence. We agree. After reviewing the trial testimony, we have found insufficient evidence that either plaintiff suffered from emotional distress. Significantly, *plaintiffs themselves* point to no such testimony in their brief on appeal. Rather, plaintiffs argue that the jury could infer that such damages occurred because Mayor Yopp implied that plaintiffs were involved in stealing money from the police department. In essence, plaintiffs argue that it was permissible for the jury to simply speculate that plaintiffs suffered from emotional distress. However, a plaintiff must prove the fact of damages, not simply rely on

speculation that damages might have occurred. *Health Call of Detroit*, 268 Mich App at 96; *Wolverine Upholstery Co*, 1 Mich App at 244.

Remittitur is appropriate here because the jury's award was not supported by the evidence. *Silberstein*, 278 Mich App at 462. As MCR 2.611(E)(1) contemplates, the only error was the excessiveness of the jury's verdict. The factors discussed in *Freed* weigh in favor of granting remittitur. It appears that the "verdict was the result of . . . [a] mistake of law or fact . . . ." *Freed*, 286 Mich App at 334. In addition, the verdict was not "within the limits of what reasonable minds would deem just compensation for the injury sustained," *id.*, given the insufficiency of the evidence.

Accordingly, we reverse in part the trial court's opinion and order denying defendant's motion for a new trial or remittitur and remand with instructions that the trial court, pursuant to MCR 2.611(E)(1), "deny [the] motion for new trial on condition that within 14 days the nonmoving party consent in writing to the entry of judgment in an amount . . . the evidence will support." Because the only portion of the award not sufficiently supported by the evidence was the award of $500,000 to each plaintiff for emotional distress, plaintiffs should be provided 14 days to consent to a judgment reduced by this amount.

Plaintiffs also argue on appeal that the trial court erred when it limited their recovery of future lost wages to a period of seven years after their discharge, and ask that this Court remand the case to allow the trial court to award these additional damages. However, plaintiffs did not file a cross-appeal, and as appellees, they may not obtain a decision more favorable than was provided below. *In re Herbach Estate*, 230 Mich App 276, 284; 583 NW2d 541 (1998). Thus, this Court may not provide plaintiffs the relief they seek. Moreover, plaintiffs have abandoned the issue. Plaintiffs argue that the trial court's limitation was erroneous because, "[u]nder applicable case law, [p]laintiffs should have been allowed to recover damages based upon their life expectancies . . . ." Plaintiffs, however, fail to cite any such "applicable case law . . . ." "[T]his Court will not search for authority to support a party's position, and the failure to cite authority in support of an issue results in its being deemed abandoned on appeal." *Flint City Council*, 253 Mich App at 393 n 2. Further, plaintiffs point to no evidence presented at trial regarding their life expectancies. Plaintiffs are not entitled to appellate relief.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Patrick M. Meter