BUHALIS v TRINITY CONTINUING CARE SERVICES

Docket Nos. 296535 and 300163. Submitted November 9, 2011, at Detroit. Decided May 29, 2012, at 9:10 a.m. Leave to appeal denied, 493 Mich 901.

Mary Buhalis brought an ordinary negligence and premises liability tort action in the Macomb Circuit Court against Trinity Continuing Care Services for injuries suffered when she slipped and fell on ice after parking her tricycle in the patio area of a nursing home owned by Trinity that was adjacent to its main covered walkway and entrance. The court, Peter J. Maceroni, J., denied Trinity's second motion for summary disposition on Buhalis's first amended complaint in which she sought to hold Trinity liable for ordinary negligence. Trinity sought leave to appeal the circuit court order denying its second motion for summary disposition, which the Court of Appeals granted in an unpublished order, entered June 4, 2010 (Docket No. 296535). In the same docket number, Buhalis cross-appealed the circuit court order dismissing her premises liability complaint on the basis that the danger was open and obvious. Trinity also sought leave to appeal the circuit court order that denied its third motion for summary disposition on the basis that there was an issue of fact regarding Buhalis's alleged violation of MCL 125.471. The Court of Appeals granted leave to appeal in an unpublished order, entered May 18, 2011 (Docket No. 300163). The Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. The gravamen of an action is determined by reading the complaint as a whole and looking beyond the mere procedural labels to determine the exact nature of the claim. Accordingly, courts are not bound by the labels that parties attach to their claims. Michigan caselaw distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land. For claims premised on a condition of the land, liability arises solely from the defendant's duty as an owner, possessor, or occupier of the land. The action sounds in premises liability rather than ordinary negligence if the plaintiff's injury arose from an allegedly dangerous condition on the land, even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury. The circuit court erred by denying

Trinity's motion for summary disposition of Buhalis's ordinary negligence claim because the action actually asserts a common-law premises liability claim; Buhalis's assertion that an employee caused the dangerous condition on the patio did not transform the claim into one for ordinary negligence.

2. The following elements of negligence must be proven in a premises liability action: (1) the defendant owed the plaintiff a duty, (2) the defendant breached the duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages. A possessor of land is not an absolute insurer of an invitee's safety. An owner of land generally owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land. In the absence of special aspects, this duty does not extend to open and obvious dangers. Only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will remove that condition from the open-and-obvious-danger doctrine. The open-and-obvious-danger doctrine is not an exception to this general duty but is an integral part of the definition of that duty.

3. When dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless the invitor should anticipate the harm despite knowledge of it on behalf of the invitee. The hazard presented by snow and ice is generally open and obvious and the landowner has no duty to warn of or remove the hazard. If a condition creates a risk of harm only because the invitee does not discover the condition or realize its danger, then the open-and-obvious-danger doctrine will cut off liability if the invitee should have discovered the condition and realized its danger. Recovery is not allowed if the condition is so common that the possibility of its presence is anticipated by prudent persons. The circuit court properly dismissed Buhalis's premises liability claim. Buhalis failed to establish a genuine issue of material fact with regard to whether the ice was open and obvious because she knew of the danger of ice on the patio and the presence of other indicia of a potentially icy condition would have alerted an average user of ordinary intelligence to discover the danger on casual inspection. Because Trinity provided a clear means of ingress and egress and Buhalis strayed off this path onto the patio that was obviously not reserved for that purpose, Trinity did not breach its duty of reasonable care. Reasonable minds could not disagree that Trinity exercised reasonable care because the

main walkways and sidewalks were clear and it was not unreasonable to not clear the ice or snow from the patios.

4. Trinity cannot be liable under MCL 600.5839 for an alleged defect in the design or construction of the roof of the building and the awning because it was unrebutted that Trinity neither designed nor constructed them.

5. Under Mich Admin Code, R 325.21304(2), nursing homes are required to maintain the premises in a safe and sanitary condition and in a manner consistent with the public health and welfare. Buhalis abandoned her claim under Rule 325.21304(2) because she failed to provide legal authority for her position that this regulation provides a private cause of action.

6. Under MCL 125.471 of the Housing Law of Michigan, MCL 125.401 *et seq.*, an owner has an obligation to maintain the roof of a dwelling and to appropriately drain the rain water. The circuit court erred by failing to dismiss Buhalis's claim premised on a violation of MCL 125.471. Assuming, without deciding, that MCL 125.471 applies to Trinity's facility and to a guest of an occupant, the statute does not provide an independent cause of action. Although the statute imposes an obligation to maintain a dwelling's roof and to drain rain water, the duty is imposed to avoid dampness in the walls as well as insanitary conditions. The statute does not impose a duty to remove snow and ice on the grounds outside the dwelling.

7. The circuit did not err by dismissing Buhalis's claim premised on MCL 554.139(1), which requires a landlord to ensure that the premises and all common areas are fit for their intended use. The duty imposed by MCL 554.139(1) does not extend to the social guests of tenants.

Affirmed in part, reversed in part, and remanded for entry of summary disposition in favor of Trinity on all issues in both dockets.

M. J. KELLY, P.J., concurring in part in the result only and dissenting in part, agreed that the circuit court erred by denying Trinity's motion to dismiss Buhalis's ordinary negligence claim and that the circuit court properly dismissed Buhalis's statutory and regulatory claims. Judge KELLY would have reversed the circuit court order granting Trinity summary disposition on Buhalis's premises liability claim because there was a question of fact regarding whether Trinity had a duty to warn or protect her from the hazards of snow and ice on the patio. Judge KELLY would have found that the ice was not open and obvious and there was a

question of fact regarding whether Buhalis was an invitee or trespasser at the time she slipped and fell on the patio.

1. NEGLIGENCE — PREMISES LIABILITY — DANGEROUS CONDITION OF THE LAND.

Michigan caselaw distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land; for claims premised on a condition of the land, liability arises solely from the defendant's duty as an owner, possessor, or occupier of the land; an action sounds in premises liability rather than ordinary negligence if the plaintiff's injury arose from an allegedly dangerous condition on the land, even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury.

2. NEGLIGENCE — PREMISES LIABILITY — OPEN-AND-OBVIOUS-DANGER DOCTRINE — SPECIAL ASPECTS.

A possessor of land is not an absolute insurer of an invitee's safety; an owner of land generally owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land; in the absence of special aspects, this duty does not extend to open and obvious dangers; only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will remove that condition from the open-and-obvious-danger doctrine.

3. NEGLIGENCE — PREMISES LIABILITY — OPEN-AND-OBVIOUS-DANGER DOCTRINE — SNOW AND ICE — CLEAR MEANS OF INGRESS AND EGRESS.

When dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee; the hazards presented by snow and ice are generally open and obvious and the landowner has no duty to warn of or remove the hazard; if a condition creates a risk of harm only because the invitee does not discover the condition or realize its danger, then the open-and-obvious-danger doctrine will cut off liability if the invitee should have discovered the condition and realized its danger; recovery is not allowed if the condition is so common that the possibility of its presence is anticipated by prudent persons; a landowner's duty of reasonable care is not breached when a premises possessor provides a clear means of ingress and egress and the invitee strays off the normal pathway onto an area that is obviously not reserved for that purpose.

*Cooper Law Firm, PLLC* (by *John J. Cooper*), for Mary Buhalis.

*Kitch Drutchas Wagner Valitutti & Sherbrook* (by *Susan Healy Zitterman* and *John P. Hessberg*) for Trinity Continuing Care Services.

Before: M. J. KELLY, P.J., and SAAD and O'CONNELL, JJ.

SAAD, J.

### I. NATURE OF THE CASE

Under Michigan law, a premises possessor generally owes no duty to an invitee to warn of or protect from open and obvious dangers, such as ice and snow, absent special aspects. We hold that, for the reasons set forth below, the icy condition that plaintiff encountered was open and obvious. We also hold that, as a matter of law, if a premises possessor provides a clear means of ingress and egress and an invitee strays off the normal pathway onto an area that is obviously not reserved for that purpose, the landowner has not breached its duty of "reasonable care." When a pathway for normal access is made available to an invitee and the dangers of straying off the clear path are, as here, open and obvious, the premise possessor owes no duty to warn or protect such an invitee.

### II. FACTS

In January 2008, plaintiff, Mary Buhalis, slipped and fell on ice on a patio near the front entrance of a building owned by defendant, Trinity Continuing Care Services. On the morning of the incident, Ms. Buhalis rode a large, three-wheeled tricycle to the nursing home to donate a bag of clothes. She parked her

trike on the uncleared and unsalted patio adjacent to the main entrance walkway, which was free of ice and snow and covered by a large awning. After she dismounted her trike, Ms. Buhalis retrieved the bag of clothes from the basket on the trike and set it on the ground. She then picked up the bag and, as she started to walk toward the building, she slipped and fell. Ms. Buhalis offered conflicting testimony about the precise location of her fall, but receptionist Marlene Calcaterra testified that she saw Ms. Buhalis attempting to get up from the ground right outside her window, which is directly in front of the patio. At oral argument on appeal, plaintiff's counsel agreed that Ms. Buhalis fell on the patio and not on the cleared walkway leading to the building.

Joshua Shock, the maintenance technician for the nursing home, testified that part of his job is to remove snow and place salt on the walkways and entrance areas of the building. Mr. Shock testified that the sidewalks and main entrance walkway were clear of ice and snow when Ms. Buhalis fell. He further testified that he never salted or removed ice from the patios and that generally they were not maintained during the winter months. According to Mr. Shock, the large awning over the main walkway "performed as designed, in directing rain and melting snow and ice away from the covered walkway and entrance to the building, and onto the uncovered cement patio areas adjacent to each side of the awning." Mr. Shock recalled that on the day Ms. Buhalis fell, there was visible ice on the patio in the area where plaintiff slipped. According to Ms. Buhalis, she was aware that ice and snow could accumulate on the patio, that the awning caused water to fall onto the patio where it could freeze and thaw, and that Trinity had posted a sign that cautioned, "SIDE-

WALKS, PARKING LOTS AND COMMON AREAS MAY BE WET, SNOWCOVERED [sic] AND SLIPPERY," but Ms. Buhalis maintained that she did not see any ice on the patio before she slipped. However, Ms. Buhalis recalled that after she fell she saw that she had slipped on a patch of ice.

Ms. Buhalis sued Trinity, alleging various claims of liability. In Docket No. 296535, Trinity appeals by leave granted[1] the trial court's order that denied its second motion for summary disposition. Ms. Buhalis also filed a cross-appeal in Docket No. 296535. In Docket No. 300163, Trinity appeals by leave granted[2] the trial court's order that denied its third motion for summary disposition. The Court of Appeals consolidated the appeals. For the reasons set forth below, we affirm in part, reverse in part, and remand for entry of summary disposition for Trinity in Docket Nos. 296535 and 300163.

### III. ORDINARY NEGLIGENCE

We agree with Trinity that the trial court erred when it denied its motion for summary disposition on Ms. Buhalis's first amended complaint, in which she asserted that Trinity should be held liable for ordinary negligence. This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007).

Courts are not bound by the labels that parties attach to their claims. *Manning v Amerman*, 229 Mich App 608, 613; 582 NW2d 539 (1998). Indeed, "[i]t is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere

---

[1] *Buhalis v Trinity Continuing Care Servs*, unpublished order of the Court of Appeals, entered June 4, 2010 (Docket No. 296535).

[2] *Buhalis v Trinity Continuing Care Servs*, unpublished order of the Court of Appeals, entered May 18, 2011 (Docket No. 300163).

procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land. See *James v Alberts*, 464 Mich 12, 18-19; 626 NW2d 158 (2001). In the latter case, liability arises solely from the defendant's duty as an owner, possessor, or occupier of land. *Laier v Kitchen*, 266 Mich App 482, 493; 702 NW2d 199 (2005). If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury. *James*, 464 Mich at 18-19.

Here, Ms. Buhalis alleged that she was injured when she slipped on ice and fell; that is, she alleged that she was injured when she encountered a dangerous condition on Trinity's premises. Though she asserted that Trinity's employees caused the dangerous condition at issue, this allegation does not transform the claim into one for ordinary negligence. *Id.* Rather, she clearly pleaded a claim founded on premises liability. Therefore, Ms. Buhalis's negligence claim is a common-law premises liability claim and, to the extent that she purported to allege an ordinary negligence claim in addition to her premises liability claim, the trial court should have dismissed that claim.

### IV. OPEN AND OBVIOUS DANGER AND DUTY OF REASONABLE CARE

On cross-appeal in Docket No. 296535, Ms. Buhalis argues that the trial court erred by granting Trinity's first motion for summary disposition regarding plaintiff's premises liability claim because Ms. Buhalis con-

tends the ice on which she fell was not open and obvious.[3]

"In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). "[T]he existence of a legal duty is a question of law for the court to decide." *Anderson v Wiegand*, 223 Mich App 549, 554; 567 NW2d 452 (1997). A "possessor of land is not an absolute insurer of the safety of an invitee." *Id*. Generally, an owner of land "owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). Absent special aspects, this duty does not extend to open and obvious dangers. *Id*. at 516-517. Moreover, "the open and obvious doctrine should not be viewed as some type of 'exception' to the duty generally owed invitees, but rather as an integral part of the definition of that duty." *Id*. at 516.

"[W]here the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Riddle v McLouth Steel Prods Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992). Indeed, there is an overriding public policy that people should "take reasonable care for their own safety" and this precludes

---

[3] The trial court subsequently set aside its order granting defendant's first motion for summary disposition, but on different grounds. The trial court did not alter its decision regarding this issue.

the imposition of a duty on a landowner to take extraordinary measures to warn or keep people safe unless the risk is unreasonable. *Bertrand v Alan Ford, Inc*, 449 Mich 606, 616-617; 537 NW2d 185 (1995).

"Generally, the hazard presented by snow and ice is open and obvious, and the landowner has no duty to warn of or remove the hazard." *Royce v Chatwell Club Apartments*, 276 Mich App 389, 392; 740 NW2d 547 (2007). Here, Ms. Buhalis contends that the ice was not open and obvious because it was clear and she did not see it before she fell. However, if a "condition creates a risk of harm *only* because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger." *Bertrand*, 449 Mich at 611. A plaintiff may not recover if the condition is " 'so common that the possibility of [its] presence is anticipated by prudent persons.' " *Id*. at 615 (citation omitted).

In *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 479; 760 NW2d 287 (2008), this Court explained: "When applying the open and obvious danger doctrine to conditions involving the natural accumulation of ice and snow, our courts have progressively imputed knowledge regarding the existence of a condition as should reasonably be gleaned from all of the senses as well as one's common knowledge of weather hazards that occur in Michigan during the winter months." Thus, the question is whether the ice was visible on casual inspection or whether there were other indicia of a potentially hazardous condition that would impute knowledge on the part of Ms. Buhalis. *Id*. at 483.

Here, Ms. Buhalis failed to establish a genuine issue of material fact with regard to whether the ice was open and obvious because, even if the ice could be fairly character-

ized as clear, Ms. Buhalis knew of the danger of ice on the patio and other indicia of a potentially icy condition would have alerted an average user of ordinary intelligence to discover the danger on casual inspection.

Evidence showed that it rained and snowed the day before plaintiff's fall. Though temperatures rose during the night before the incident, Ms. Buhalis admitted that after she fell she could see the patch of ice on which she slipped, and Mr. Shock testified that when he went to move Ms. Buhalis's trike after her fall the ice on the patio was evident. Further, at the time of her fall, Ms. Buhalis had lived through 85 Michigan winters. She testified that she knew that even when sidewalks are clear, there is danger of "black ice" on the ground. Ms. Buhalis also testified that she knew that water fell from the awning onto the patio and that ice may develop from a freeze-thaw cycle. She further stated that she had chosen to park her trike away from the awning because she knew there could be ice present from water runoff. Ms. Buhalis was also specifically aware of the caution sign warning that the common areas could be wet, snow-covered, and slippery, but she knowingly chose not to heed the warning and, thus, voluntarily exposed herself to the hazard. Again, while a premises possessor owes a duty to invitees to exercise reasonable care to protect the invitees from an unreasonable risk of harm, invitees have a concurrent and important duty to "take reasonable care for their own safety." *Bertrand,* 449 Mich at 616-617. For these reasons, the danger of ice was actually known to Ms. Buhalis and a reasonably prudent person in Ms. Buhalis's position would have foreseen the danger of slipping on ice. *Riddle,* 440 Mich at 96.[4]

---

[4] Moreover, no special aspects existed that would have differentiated the icy condition from a typical open and obvious risk. "[O]nly those

We further observe that there is no question of fact with regard to whether Trinity exercised reasonable care to protect invitees from the dangers of ice and snow. The degree of care required of a premises possessor is to "take reasonable measures within a reasonable period of time after the accumulation of snow and ice to diminish the hazard of injury to [the plaintiff, but] only if there is some special aspect that makes such accumulation unreasonably dangerous." *Mann v Shusteric Enterprises, Inc*, 470 Mich 320, 332; 683 NW2d 573 (2004) (quotation marks omitted). See also *Benton*, 270 Mich App at 443 n 2 ("*Mann* established that there is no general duty of inviters to take reasonable measures to remove snow and ice for the benefit of invitees unless the accumulation meets the [*Mann*] majority's high standard of creating an unreasonable risk of danger.").

---

special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine." *Lugo*, 464 Mich at 519. Thus, for example, an unguarded 30-foot-deep pit in a parking lot would present such a substantial risk of death or severe injury that it would be unreasonably dangerous to maintain the condition despite its obvious nature. *Id*. at 518. Also, an effectively unavoidable condition, such as the presence of standing water on the floor of the only exit in a commercial building, would present a special aspect to differentiate such a hazard from a typical open and obvious risk. *Id*. However, "[n]either a common condition nor an avoidable condition is uniquely dangerous." *Kenny v Kaatz Funeral Home, Inc*, 264 Mich App 99, 117; 689 NW2d 737 (2004) (GRIFFIN, J., dissenting), rev'd 472 Mich 929 (2005).

Here, the patio was clearly avoidable because Ms. Buhalis was not required to use it and, again, the main walkway to the front entrance was clear. Evidence also showed that a side entrance was available for visitors to use. Moreover, the presence of ice on the patio did not present such a substantial risk of death or severe injury that it was unreasonably dangerous to maintain the condition. *Corey v Davenport College of Business (On Remand)*, 251 Mich App 1, 7; 649 NW2d 392 (2002); *Joyce v Rubin*, 249 Mich App 231, 243; 642 NW2d 360 (2002). Accordingly, plaintiff has failed to establish that any special aspect existed that rendered the icy condition effectively unavoidable or unreasonably dangerous.

In other words, it is not Trinity's duty to guarantee that ice will never form on its premises, but it does have a duty to ensure that invitees are not unnecessarily exposed to an unreasonable danger.

Reasonable minds could not disagree that Trinity exercised "reasonable care." Trinity provided a sizeable, fully cleared walkway to its main entrance, covered by a large awning to protect the walkway from the elements. Mr. Shock also testified that all sidewalks surrounding the building were clear and free of ice and snow. It was not unreasonable for Trinity not to clear ice or snow from its seasonal patios. Again, during the winter, a premises possessor cannot be expected to remove snow and ice from every portion of its premises, including areas adjacent to a cleared walkway, and Michigan caselaw makes it clear that such extraordinary measures are not required. *Mann*, 470 Mich at 332; *Benton*, 270 Mich App at 443 n 2. Further, Trinity posted a caution sign warning that the area may be slippery. Trinity had no duty to clear every surface on which Ms. Buhalis, individually, may have chosen to park her trike, whenever she might visit, in whatever type of weather. And, there is no evidence that the patios were used by invitees throughout the winter. That Ms. Buhalis chose to stray from the safe means of ingress to and egress from the building does not impose liability on Trinity, when Trinity clearly complied with its duty of care to invitees.

## V. DESIGN AND CONSTRUCTION

Trinity argues that Ms. Buhalis's claims that it defectively designed and constructed the roof of the building and the awning—even if those claims are distinct from the premises liability claim—are barred under MCL 600.5839. That statute protects "any con-

tractor making the improvement." MCL 600.5839(1). Because there is no evidence that Trinity designed or constructed the roof or the awning, that statute does not apply. For the same reason, Ms. Buhalis's design and construction claims fail. Trinity presented unrebutted evidence that it did not design or construct the improvements on the premises. In the absence of evidence that Trinity designed or constructed the improvements, Trinity cannot be liable for a defect in their design or construction. See MCR 2.116(C)(10).

VI. REGULATORY AND STATUTORY CLAIMS

We also reject Ms. Buhalis's claim that she has a cause of action under Mich Admin Code, R 325.21304(2), which requires nursing homes to maintain the premises in "a safe and sanitary condition and in a manner consistent with the public health and welfare." Ms. Buhalis presents no argument or authority that this regulation provides a private cause of action. See *Lash v Traverse City*, 479 Mich 180, 192-193; 735 NW2d 628 (2007) (setting forth the test for determining when a private right of action for damages can be inferred from a statute). And this Court will not search for authority to support or reject her position. See *Flint City Council v Michigan*, 253 Mich App 378, 393 n 2; 655 NW2d 604 (2002). Therefore, we hold that Ms. Buhalis failed to establish that she had a viable claim under that regulation.

Further, were we to assume (without deciding) that MCL 125.471 applies to Trinity's facility and to a guest of an occupant, see MCL 125.401 (applying the housing law to certain classes of municipalities) and MCL 125.536 (stating that an occupant has a cause of action under the housing law), we hold that MCL 125.471 does not provide an independent cause of

action under the facts of this case. Although the statute imposes an obligation to maintain the roof of a dwelling and to drain rain water, it specifically provides that the duty is imposed to "avoid dampness in the walls and ceilings and insanitary conditions." *Id.* That is, it plainly does not impose a duty to remove snow and ice on the grounds outside the dwelling. And Ms. Buhalis did not otherwise allege that her injuries resulted from a failure to maintain the dwelling in good repair. See *Morningstar v Strich*, 326 Mich 541, 545; 40 NW2d 719 (1950) (holding landlord liable for injuries to tenant's child when injured by radiator that landlord had prior knowledge was defective). Accordingly, under these facts, the trial court should have dismissed Ms. Buhalis's claim to the extent that it relied on MCL 125.471.

There is also no merit to Ms. Buhalis's argument that the trial court erred when it dismissed her claim premised on the duty imposed on landlords under MCL 554.139(1). Our Supreme Court has held that MCL 554.139(1) does not apply to social guests of a tenant. See *Mullen v Zerfas*, 480 Mich 989, 990; 742 NW2d 114 (2007). Accordingly, MCL 554.139(1) does not apply.

### VII. CONCLUSION

For the above reasons, the trial court should have granted summary disposition to Trinity on all of Ms. Buhalis's claims. In light of our resolution of these issues, we need not address the parties' remaining arguments.

Affirmed in part, reversed in part, and remanded for entry of summary disposition for defendant in Docket Nos. 296535 and 300163. We do not retain jurisdiction.

O'CONNELL, J., concurred with SAAD, J.

M. J. Kelly, P.J. (*dissenting*). Although I do not join its analysis, I concur with the majority's conclusions with regard to plaintiff Mary Buhalis's ordinary negligence claim as well as her statutory and regulatory claims. I must dissent, however, from the majority's decision to disregard settled premises liability law governing the duties owed by a premises possessor to his or her invitees. In a departure from Michigan's common law, the majority holds that—as a matter of law—a premises possessor owes no duty to diminish the hazard of ice and snow from its property beyond clearing a single path to and from its main entrance. For the first time in Michigan's jurisprudence, a premises possessor will have no duty to protect an invitee from a particular class of hazards; hazards that the premises possessor knows about, but that the invitee might not know or have reason to know about—that is, for the first time an invitee will be relegated to the legal status of a trespasser while in an area of a defendant's premises where he or she has not trespassed and where he or she is still, for all other purposes, an invitee. To this novel proposition, I cannot subscribe.

I conclude that Buhalis presented evidence that established a question of fact as to whether defendant, Trinity Continuing Care Services, impliedly invited her to use the patio to park her tricycle. Accordingly, she established a question of fact as to whether Trinity had a duty to clear the patio for her, as its invitee, and breached that duty. She also presented evidence from which a reasonable jury could have concluded that the ice at issue was not open and obvious. Because a jury had to resolve these factual questions, the trial court erred when it dismissed Buhalis's premises liability claim. I would reverse and remand for a trial on the merits.

### I. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to dismiss a claim under MCR 2.116(C)(10). *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).

### II. PREMISES LIABILITY

#### A. THE DUTY TO PROTECT INVITEES USING THE PATIO

On appeal, Trinity argues that it owed no duty to keep ice and snow from the patio because the patio was closed for the winter. The duty that a premises possessor owes to persons visiting his or her property is inextricably intertwined with the visitor's legal status while visiting the premises. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000). A premises possessor owes the highest duty to those persons that visit his or her property as invitees:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if the owner: (a) knows of, or by the exercise of reasonable care would discover, the condition and should realize that the condition involves an unreasonable risk of harm to such invitees; (b) should expect that invitees will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect invitees against the danger. [*Id.* at 597, citing *Quinlivan v Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244, 258; 235 NW2d 732 (1975), citing 2 Restatement Torts, 2d, § 343, pp 215-216.]

Typically, whether a premises possessor had a duty cognizable at law is a question of law to be decided by the courts. See *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 95; 485 NW2d 676 (1992) (noting that the trial court must decide the threshold issue of duty of care in

a negligence action). However, "if there is evidence from which invitee status might be inferred, it is a question for the jury." *Stitt*, 462 Mich at 595; see also *Bertrand v Alan Ford, Inc*, 449 Mich 606, 617; 537 NW2d 185 (1995).

In this case, Buhalis, who was 86, testified that she liked to visit friends at Sanctuary at the Abbey, a nursing home owned and operated by Trinity. She said that she rode her three-wheeled cycle to the Abbey on the day at issue to deliver a bag of clothing for patients or friends. Therefore, there was evidence from which a reasonable jury could conclude that Buhalis was an invitee to those parts of the premises that visitors typically use. See *Stanley v Town Square Coop*, 203 Mich App 143, 147-148; 512 NW2d 51 (1993) (holding that a tenant's guests are invitees of the landlord because the landlord derives a pecuniary benefit from the consideration paid by the tenants in exchange for the right to invite guests); see also 2 Restatement Torts, 2d, § 332, comment g, p 180 (noting that those who "go to a hotel to pay social calls upon the guests or to a railway station to meet passengers or bid them farewell, are business visitors, since it is part of the business of the hotelkeeper and railway to afford the guest and passengers such conveniences"). But, as our Supreme Court has recognized, a visitor can lose his or her invitee status if he or she moves from an area open to invitees into an area that is not open to invitees. See, e.g., *Muth v W P Lahey's, Inc*, 338 Mich 513, 517-518; 61 NW2d 619 (1953) (holding that, although the plaintiff proceeded to go into the store's backroom to look for shoes, it was undisputed that the store's clerk had instructed her to do so and, as such, the plaintiff was still an invitee, not a mere licensee). Thus, if the patio was closed for the winter, Buhalis might not have been an invitee when she used the patio. Nevertheless, as our

Supreme Court explained approximately 80 years ago in *Nezworski v Mazanec*, 301 Mich 43; 2 NW2d 912 (1942), a visitor's status is a matter for the jury if there is evidence from which it could find that the visitor reasonably understood that he or she had the right to use the area at issue.

In *Nezworski*, the plaintiff had gone to the defendant's restaurant for a Christmas party. *Id.* at 51. The restaurant had two rooms, a larger room in the front and a smaller room in the rear. *Id.* at 48-49. There was a door in the rear room that led out to a narrow cement platform, which had been enclosed. On the east end of the platform there was another door that led out to an alley and on the west end there was a flight of stairs that led to the basement. *Id.* The plaintiff was using the rear room when she decided to get some fresh air and left through the rear door leading to the cement platform. As she stepped through the door she lost her balance and fell down the stairs. *Id.* at 51-52.

On appeal, the defendant argued that it owed the plaintiff no duty to warn or protect her because when the plaintiff went "through the doorway in the rear room and upon the cement platform leading to the alley," she became a trespasser. *Id.* at 58. In analyzing the issue, our Supreme Court explained that a premises possessor's duty can arise from an implied invitation to use the area at issue:

> "An implied invitation is one which is held to be extended by reason of the owner or occupant doing something or permitting something to be done which fairly indicates to the person entering that his entry and use of the property is consistent with the intentions and purposes of the owner or occupant, and leads him to believe that the use is in accordance with the design for which the place is adapted and allowed to be used in mutuality of interest." [*Id.* at 59, quoting 45 CJ, Negligence, § 220, pp 809-810.]

The Court noted that there was evidence that "other members of the party were using the rear room" and that the "door leading from such room onto the platform and to the alley was not locked and was open at least a part of the time during the evening." *Nezworski*, 301 Mich at 59. There was also evidence that, despite the defendant's denials, he must have been aware that his guests were using the doorway and platform as an exit to the alley. *Id.* The Court explained that the "circumstances were such that [the] plaintiff could reasonably presume that she had the same right as others to use the door, platform, and alley." *Id.* Accordingly, there was "testimony from which the jury could reasonably find that [the] plaintiff, when using the doorway and platform leading to the alley, was an invitee, and not a trespasser." *Id.* at 60. Because the plaintiff was an invitee when she entered onto the platform, the defendant had the requisite duty to warn or otherwise protect her from the hidden danger posed by the platform's condition. *Id.* at 60-61.

In this case, Buhalis testified that she had ridden her tricycle to the Abbey before and parked it on the patio near the entrance. There was also evidence that the Abbey's employees had seen her do so in the past. Indeed, she parked her tricycle in front of the Abbey's office window. There was also no evidence that the patio was actually or constructively closed for the winter; there was no sign or barrier to suggest that the patio was closed and there was no evidence that anyone from the Abbey had told her that she could not use the patio. In addition, when asked whether he salted the patio area, the Abbey's maintenance man, Joshua Shock, answered: "No, we never did that, unless—if we have extra time or we weren't really busy that day, then maybe, but never." This evidence permits an inference that Buhalis had used the patio with the knowledge and

implied consent of the Abbey's staff. Shock's testimony further established that the Abbey's maintenance staff would, if they had time, clear the patio—presumably for use by the Abbey's residents and visitors. Accordingly, there was evidence from which a jury could find that Buhalis's use of the patio area—even during winter— was "consistent with the intentions and purposes of the owner or occupant," so that Buhalis reasonably believed that her "use [was] in accordance with the design for which the place is adapted and allowed to be used in mutuality of interest." *Id.* at 59 (quotation marks and citation omitted). For that reason, there was a question of fact as to whether Trinity had a duty to warn or protect Buhalis from the hazards posed by snow and ice on the patio. *Stitt*, 462 Mich at 595; *Bertrand*, 449 Mich at 617.

The majority concludes that Trinity had no duty to clear the patio of snow and ice because the patio was closed for the winter. That is, it essentially *finds* that Buhalis was a *trespasser* to the extent that she strayed from the path that Trinity cleared to its main entrance. To make this finding, the majority must have rejected the evidence that would permit a jury to find that Buhalis reasonably believed that she had the right to use the patio to park her tricycle and did so with Trinity's implied consent. But this Court—like the trial court below—is not permitted to weigh the evidence or assess credibility on a motion for summary disposition. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). Rather, it must review all the evidence in the light most favorable to the nonmoving party. *Id.* And, given the evidence actually presented by the parties, there is a question of fact as to whether Buhalis was an invitee at the time and place of her fall. If she was an invitee, then Trinity had a duty to warn or protect her from the hazards that were on the patio.

In addition to improperly weighing the evidence, the majority also uses the facts of this case to fundamentally alter the duty that premises possessors owe to warn or protect their invitees from snow and ice. Under the majority's new rule, a rule previously unknown to Michigan law, a premises possessor no longer has any duty to clear snow and ice except to provide a path to the "main entrance." Apparently, a premises possessor's invitees now "assume the risk" for harms from the hazards posed by snow and ice on the paths leading to every entrance other than the main entrance and for any other outdoor area that the premises possessor has invited the general public to use during the winter but chooses not to clear of snow and ice. Moreover, I cannot agree with the majority's apparent conclusion that Trinity necessarily satisfied its duty by posting a sign warning that the main path might be slippery. It is well settled that, although the existence of a duty will often be a question of law, it is for the jury to decide "whether [the defendant's] conduct in the particular case is below the general standard of care" unless reasonable minds could not differ. *Moning v Alfono*, 400 Mich 425, 438; 254 NW2d 759 (1977). Here, a reasonable jury could conclude that, given the danger posed by black ice and the likelihood that its invitees would not discover the ice, Trinity should have taken additional steps to abate the hazard beyond posting a sign.

I also cannot agree with the majority's conclusion that ice is an open and obvious danger as a matter of law because there was evidence that an average person of ordinary intelligence would not notice the ice on casual inspection.

### B. OPEN AND OBVIOUS DANGERS

Even though there is a question of fact as to whether Trinity owed a duty to Buhalis as an invitee

on the patio, Trinity would not owe Buhalis any duty if the ice at issue was an open and obvious danger. See *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516-519; 629 NW2d 384 (2001). The open and obvious danger doctrine is not an exception to the duty owed by a possessor of land, but a part of its definition. *Id.* at 516. A premises possessor need not protect an entrant onto the land from an obvious danger, because an obvious danger is no danger to a reasonably careful person. *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 478; 760 NW2d 287 (2008). Whether a hazard was open and obvious is determined by an objective standard. *Novotney v Burger King Corp (On Remand)*, 198 Mich App 470, 475; 499 NW2d 379 (1993). A dangerous condition is open and obvious when the hazard is one that an average person of ordinary intelligence would have discovered upon casual inspection. *Joyce v Rubin*, 249 Mich App 231, 238; 642 NW2d 360 (2002).

Buhalis testified at her deposition that, before she fell, she "look[ed] to see if there was any ice," but "didn't see any." It was only after she fell that she saw the ice that caused her fall. Further, although Buhalis acknowledged that she saw the ice after her fall and could have seen the ice had she looked down at it, taken in context, it is evident that the ice was only visible through close inspection near the ground—not through casual inspection while walking. Further, there was no evidence that there were other conditions that, when considered in context, would have placed a reasonable person on notice that there was ice at that *specific* location. See *Slaughter*, 281 Mich App at 482-484. Given this evidence, I also conclude that the trial court erred to the extent that it determined that the ice was an open and obvious danger as a matter of law. Whether

the ice constituted an open and obvious hazard is a question for a jury, not the court.

In concluding that the ice involved in this case was an open and obvious danger, the majority—in part—perpetuates the fallacy that a person's general knowledge about the potential for snow and ice is the same as having specific knowledge about the existence of a particular patch of snow and ice.[1] But the open and obvious danger doctrine is premised on the concept that a reasonably prudent person in the invitee's circumstances would have *actual* knowledge of a *specific* hazard—not that a reasonably prudent person would understand the mere possibility that a hazard might, in theory, exist somewhere. Courts rightly assume that a person will easily avoid a hazard that he or she can readily observe. *Slaughter*, 281 Mich App at 478. But it is fundamentally wrong to require invitees to avoid hazards that an average person of ordinary intelligence would not notice on casual inspection just because such a person generally understands that such hazards exist. By validating this fallacy, courts essentially abrogate a premises possessor's duty to clear snow and ice, because all snow and ice—whatever the surrounding circumstances and without regard to whether it is, in fact, obvious—is an open and obvious danger as a matter of law. But, whatever the merits of that position as a matter of public policy, it remains the law in this state

---

[1] This fallacy, of course, can be misapplied to eliminate the duty to warn or remediate every hazard known to man: people know that manhole covers sometimes collapse under the weight of a pedestrian, so the hazard posed by collapsing manhole covers is open and obvious, even when there is no visible evidence that a manhole cover is in danger of collapsing; similarly, everyone knows that elevators sometimes crash to the earth, so the hazard posed by a falling elevator is open and obvious to every elevator passenger, even in the absence of visible evidence that the elevator is in disrepair.

that premises possessors must take reasonable steps to safeguard their invitees from the hazards posed by accumulated snow and ice. See *Quinlivan*, 395 Mich at 257-261.[2]

I would reverse the trial court's decision to dismiss Buhalis's premises liability claim and remand for a trial on the merits.

---

[2] Although it might sometimes appear to the contrary, our Supreme Court has never overruled *Quinlivan*. Instead, our Supreme Court has clarified that the duty stated in *Quinlivan* "must be understood in light of this Court's subsequent decisions in *Bertrand* [449 Mich 606] and *Lugo* [464 Mich 512]." *Mann v Shusteric Enterprises, Inc*, 470 Mich 320, 333 n 13; 683 NW2d 573 (2004). Thus, premises possessors—at least in theory—continue to have a duty to take reasonable measures to diminish the hazards of snow and ice from those portions of the premises possessor's land to which they have expressly or impliedly invited their guests.