*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF GERALD DAVID ROSENTHAL, by
LYNN ROSENTHAL, Personal Representative,

UNPUBLISHED
July 28, 2022

Plaintiff-Appellee,

v

No. 357436
Oakland Circuit Court
LC No. 2020-181406-NO

LNS TOBACCO, INC., doing business as OAK
PARK FUEL,

Defendant-Appellant.

Before:  M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

In this action involving a slip and fall, defendant appeals by leave granted[1] the trial court's order denying defendant's motion for summary disposition.  For the reasons set forth in this opinion, we reverse the trial court's order and remand the matter for entry of an order granting summary disposition in favor of defendant and dismissing this action.

## I.  BACKGROUND

Defendant LNS Tobacco, Inc., doing business as Oak Park Fuel, is a gas station owned and operated by Mouayad Sokana.  The incident at issue in this case occurred on January 19, 2020, when 82-year-old Gerald Rosenthal purchased gas from defendant's gas station.  According to Sokana's deposition testimony, he opened the gas station at 7:00 a.m. on the day of the incident and he was the only person working that morning.  When Sokana arrived at the gas station, he took out the garbage and applied salt in the parking lot.  Sokana testified that he used as much salt as needed, relying on his common sense.  His typical practice was to walk around and throw salt wherever it was needed between the building and all of the driveway entrances, including near the pumps.  However, Sokana explained that he typically did not salt areas that were "dry" and did not

---

[1] *Estate of Gerald David Rosenthal v LNS Tobbacco Inc*, unpublished order of the Court of Appeals, entered September 16, 2021 (Docket No. 357436).

-1-

need it. Sokana applied salt to areas that were wet, looked like black ice, or otherwise appeared slippery.

Sokana testified that Rosenthal came to the gas station that morning at some point between the time Sokana opened and approximately 10:00 or 11:00 a.m. Sokana testified that "there was no snow that day other than whatever was kind of left over from the previous days," but he acknowledged that there was "very, very, very light" snow still on the ground. He also testified that there "was no snow there" and that it "must have melted or whatever." Sokana salted the area "as needed." When Rosenthal entered the store, Sokana observed that Rosenthal had difficulty walking. Sokana testified that Rosenthal was "stepping like inches, like pushing himself to come in" and that Rosenthal walked like "a penguin." Rosenthal paid for his gas and went back outside. Rosenthal fell while walking back to his vehicle. The fall was captured on video by a camera located outside the gas station. Sokana went outside to help, and Rosenthal declined his offer to call an ambulance. Sokana and another unidentified individual helped Rosenthal get into his vehicle, and Rosenthal left.

Sokana claimed that the area where Rosenthal fell was not slippery, icy, or dangerous. Sokana did not see any condition in the area that he thought should be avoided. Sokana claimed that the way Rosenthal walked showed that Rosenthal had medical issues and that Rosenthal fell because he could not take "regular" steps or hold himself up. Sokana maintained that the video showed that Rosenthal did not slip but "just kind of took off." Rosenthal had been to the gas station as a customer before the date of the fall.

Defendant submitted evidence of local weather data from January 17-19, 2020. According to this data, the temperature remained below freezing on January 17. On January 18, the low temperature was 25.9 degrees and the high temperature was 39.5 degrees. There was precipitation on January 18. On January 19, the day of the incident, the low temperature was 17.2 degrees and the high temperature was 28 degrees.[2]

The video of the fall shows the parking lot and gas pump area in front of the gas station store. It appears from the video that most of the parking lot is covered in a thin layer of snow. There are tire tracks through this thin layer of snow. There are also darker colored areas of pavement that could be mere discolorations or visible ice. The video shows that Rosenthal fell forward as he walked to his vehicle at the gas pump.

Rosenthal went to the emergency department at approximately 10:30 a.m. on the day of his fall. His medical record indicates that Rosenthal "present[ed] after a slip and fall on ice," that he had "facial abrasions," and that he could not raise his right arm above his head. Rosenthal was diagnosed with fractures of the right humerus.

On May 27, 2020, Rosenthal initiated this action, alleging one count of general negligence and one count of negligent hiring, training, and supervision. In Count I, although labeled

---

[2] Although these records do not indicate whether the temperatures are provided in Fahrenheit or Celsius, we assume that the temperatures are in Fahrenheit because there is no evidence that it was unseasonably hot and well above freezing on the day of the incident.

"negligence," Rosenthal alleged that he had been on defendant's premises as a business invitee on the day of the fall, that defendant breached its duty to maintain its premises in reasonably safe condition, that Rosenthal slipped and fell on an unnatural accumulation of ice on a downward slanted incline while walking to his car, that the hazard was not apparent upon casual observation, that the area had not been salted, and that Rosenthal's injuries from the fall were proximately caused by defendant's negligence. In Count II, Rosenthal alleged that the incident was a result of defendant's negligence in hiring, training, and supervision of its employees.

Rosenthal passed away before being deposed. Plaintiff Lynn Rosenthal, who was Gerald Rosenthal's daughter, was appointed personal representative of Rosenthal's estate and the parties stipulated to amending the case caption accordingly.[3]

Defendant moved for summary disposition under MCR 2.116(C)(10) and requested that the trial court dismiss the action in its entirety. Defendant argued that plaintiff's action actually sounded in premises liability rather than ordinary negligence because plaintiff claimed that a dangerous condition on land caused Rosenthal's fall. Additionally, defendant argued that plaintiff's allegation that Rosenthal's fall was caused by ice was based solely on speculation because the fall could have been the result of Rosenthal's medical issues or Rosenthal tripping over his feet. Defendant further argued that assuming Rosenthal slipped on ice, there was no evidence that defendant had actual or constructive notice of the condition, and the condition was nonetheless open and obvious without special aspects making it unreasonably dangerous. In arguing that the condition was open and obvious, defendant maintained that the wintry conditions, ice, and snow present that morning on defendant's premises would have alerted a person of ordinary intelligence to the risk of the patch of ice or black ice on which Rosenthal allegedly slipped.

Plaintiff opposed the motion, but admitted that the case sounded in premises liability and had been pleaded as such. Plaintiff testified in her deposition that Rosenthal had told her that he slipped and fell in an area where there was a big "decline" or "bump," that the pavement was icy in the area where he fell, and that there was no salt on the ground in that area. Plaintiff recounted how Rosenthal had described the incident to her:

> He told me that when he was coming -- he was having a hard time because it was snowy and icy and there wasn't any salt down. So he was slipping. He walked up to the gas station. And I believe going back down toward the gas pump where his car was, it was kind of like a slope. And when he was going back out of the gas station it was so slippery and icy and there wasn't anything – there was no traction because there was no salt so he started to go faster and faster back to his car . . . .

\* \* \*

---

[3] For the sake of simplicity, we will refer to Lynn as plaintiff in this matter to reflect her current functional role in this litigation, and Gerald Rosenthal will still be referred to by last name as necessary.

He just fell down because of the ice and snow, the momentum that kept him going, he couldn't stop. He broke his arm in two spots. He told me that two men had to pick him up and put him in his car. They finished pumping the gas was [sic] for him. He couldn't move his arm.

Plaintiff also testified that at some point after Rosenthal's fall, plaintiff went to the gas station and spoke with an individual who identified himself as the owner. Plaintiff testified that she went to the gas station because she wanted the owner to pay Rosenthal's out-of-pocket expenses. According to plaintiff, she told the owner that Rosenthal had told plaintiff that the ground where he fell was slippery and had not been salted. Plaintiff testified that the owner responded, "yeah, but that being said and done, it doesn't matter because your dad ran back to his car." Plaintiff also testified that the owner "didn't dispute" the claim that the ground had not been salted.

Defendant's reply to plaintiff's response essentially reiterated defendant's original arguments. Defendant also disputed plaintiff's characterization of Sokana's statements to which plaintiff testified in her deposition. Defendant argued that Sokana's unwillingness to confirm or deny plaintiff's claim that the parking lot was not salted on the morning of the fall when plaintiff subsequently confronted him at the gas station did not contradict Sokana's deposition testimony or undermine Sokana's credibility.

At the hearing on the motion, after hearing oral argument, the trial court denied defendant's motion. The entirety of the trial court's reasoning and analysis was as follows:

> Okay. All right. Thank you.
>
> After reviewing the briefs and the video and hearing oral argument, I find that there are multiple questions of fact that remain on all issues. Therefore, I'm denying the defendant's motion.

The trial court entered an order denying defendant's motion for summary disposition for the reasons stated on the record at the hearing.

As previously mentioned, this Court granted leave to appeal.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). Under MCR 2.116(C)(10), summary disposition is properly granted if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." When considering a motion under MCR 2.116(C)(10), the evidence submitted by the parties must be viewed "in the light most favorable to the party opposing the motion" and a genuine issue of material fact exists if "the record leaves open an issue upon which reasonable minds might differ." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks and citation omitted).

## III. ANALYSIS

We begin by addressing defendant's argument that summary disposition was warranted because there was no genuine issue of material fact that alleged hazard was open and obvious.

The parties do not dispute that this action sounds solely in premises liability and that this was the only claim raised in the complaint. Moreover, reading the complaint as a whole, we conclude that this action only involves a premises-liability claim because plaintiff alleges that Rosenthal was injured by a dangerous condition on land and plaintiff's theory for attributing liability to defendant is only based on defendant's "duty as an owner, possessor, or occupier of land." *Jahnke v Allen*, 308 Mich App 472, 474-475; 865 NW2d 49 (2014) (quotation marks and citation omitted). Merely including the additional allegation that defendant was negligent in its hiring, training, or supervision does not by itself transform what is essentially a premises liability claim into another separate and distinct claim. See *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 625; 971 NW2d 716 (2021) ("Although plaintiff alleges that the dangerous condition was created by the actions of defendant or its employees—or more accurately, their failure to act—that allegation does not transform a premises-liability action into one of ordinary negligence.").

"In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 693; 822 NW2d 254 (2012) (quotation marks and citation omitted). The starting point when analyzing a premises liability claim involves determining "the duty owed by the possessor of the premises to a person entering the premises," which ordinarily presents "a question of law to be decided by the court." *Jeffrey-Moise*, 336 Mich App at 626. The duty depends on the classification of the person entering the possessor's land. *Id*. at 626-627. In this case, the parties do not dispute that Rosenthal was an invitee. See *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 603-604; 614 NW2d 88 (2000) (holding that invitee status is accorded to individuals who visit the premises for reasons "directly tied to the owner's commercial business interests"). With respect to invitees, a possessor of land has a duty of care to "warn the invitee of any known dangers" and "to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Id*. at 597.

However, this duty to invitees "does not extend to dangerous conditions that are open and obvious." *Livings Estate v Sage's Investment Group, LLC*, 507 Mich 328, 337; 968 NW2d 397 (2021). "[W]here the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee . . . ." *Id*. (quotation marks and citation omitted; ellipsis in original). Whether a hazard is open and obvious is determined under an objective standard, considering "the objective nature of the condition of the premises at issue" and inquiring "whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner*, 492 Mich at 461 (quotation marks and citation omitted). Nonetheless, if "special aspects" of a condition make an open and obvious risk unreasonably dangerous or effectively unavoidable, then a duty is imposed on the premises possessor to undertake reasonable precautions to protect invitees from that risk. *Livings Estate*, 507 Mich at 338. If the evidence creates a question of fact regarding whether the hazard was open and obvious or whether there were special aspects making an open and obvious risk unreasonably dangerous or effectively unavoidable, then the issue should

-5-

be left to the fact-finder to decide and summary disposition is inappropriate. *Livings Estate*, 507 Mich at 334-335, 337, 348-349.

The instant case involves an allegation that Rosenthal slipped on ice, possibly black ice, while walking back to his car on defendant's premises. This Court has recently explained regarding such a hazard:

"Generally, the hazard presented by snow and ice is open and obvious, and the landowner has no duty to warn of or remove the hazard." *Buhalis*, 296 Mich App at 694 (quotation marks and citation omitted). With issues involving wintry conditions, "our courts have progressively imputed knowledge regarding the existence of a condition as should reasonably be gleaned from all of the senses as well as one's common knowledge of weather hazards that occur in Michigan during the winter months." *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 479; 760 NW2d 287 (2008). In *Janson v Sajewski Funeral Home, Inc*, 486 Mich 934, 935 (2010), our Supreme Court explained:

The Court of Appeals failed to adhere to the governing precedent established in *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 483 (2008), which renders alleged "black ice" conditions open and obvious when there are "indicia of a potentially hazardous condition," including the "specific weather conditions present at the time of the plaintiff's fall." Here, the slip and fall occurred in winter, with temperatures at all times below freezing, snow present around the defendant's premises, mist and light freezing rain falling earlier in the day, and light snow falling during the period prior to the plaintiff's fall in the evening. These wintry conditions by their nature would have alerted an average user of ordinary intelligence to discover the danger upon casual inspection.

Thus, when there are sufficient other "indicia of a potentially hazardous condition," black ice is deemed open and obvious. *Id*. In this case, wintry conditions clearly were present at the time of plaintiff's fall. It was January in Michigan, the temperature was 32 degrees Fahrenheit, and snow had been falling throughout the day. Plaintiff testified that the walkway where she fell appeared wet and that there was "lots of snow" on the grass nearby. There were patches of ice on the sidewalk that both plaintiff and her neighbor testified were visible. In fact, both plaintiff and her neighbor testified that they could see the patch of ice on which plaintiff fell following plaintiff's fall. The wintry conditions presented indicia of a potentially hazardous condition on the walkway sufficient to alert an average user of ordinary intelligence to discover the danger upon casual inspection. The black ice on which plaintiff fell was therefore open and obvious.

In denying defendant's motion for summary disposition, the trial court noted that the ice on which plaintiff fell reportedly had no deicer on it. The trial court concluded that the ice therefore apparently was not open and obvious to the person distributing the deicer. This Court has observed, however, that "[t]he

overriding principle behind the many definitions of black ice is that it is either invisible or nearly invisible, transparent, or nearly transparent." *Slaughter*, 281 Mich App at 483. Thus, regardless of whether defendant's maintenance employees saw the black ice, the indicia of a potentially hazardous condition on the walkway was sufficient to alert an average user of ordinary intelligence to discover the danger upon casual inspection, and the black ice therefore created a condition that was open and obvious. The trial court therefore erred by determining that an issue of fact existed regarding the open and obvious nature of the black ice. [*Jeffrey-Moise*, 336 Mich App at 633-635 (alteration in original).]

Here, there was testimony from Sokana that there was very light snow on the ground on the day of the fall, which remained from snow that had fallen on a previous day. The video also supports this testimony: it shows a layer of snow on the ground with tire tracks, as well as snow covering various other surrounding surfaces. Moreover, the record evidence of the local weather conditions indicates that there was some precipitation the day before the fall and that the temperatures remained below freezing on the day of the fall. Additionally, the low temperature on the day before the fall was below freezing while the high temperature the day before the fall was above freezing, which supports the possibility of thawing and refreezing snow or ice on the ground. There was evidence that Rosenthal reported that he fell on an icy patch. There was also testimony that Rosenthal told plaintiff that he was slipping as he was initially walking from his vehicle to *enter* the gas station because it was snowy and icy. Rosenthal slipped and fell after he walked out of the gas station to return to his vehicle.

All of these wintry conditions occurring on a day in January in Michigan provided indicia of a potentially hazardous icy condition such that an ordinary user of average intelligence could reasonably be expected to discover it upon a casual inspection, and any ice or black ice was therefore open and obvious. *Id*.; *Hoffner*, 492 Mich at 461. Because the condition was open and obvious,[4] defendant owed no duty to protect or warn plaintiff regarding this hazard. *Livings Estate*, 507 Mich at 337.[5] Hence, there is no genuine question of material fact that plaintiff cannot establish the duty element of her premises-liability claim, and defendant was entitled to summary disposition in its favor. *Buhalis*, 296 Mich App at 693. Accordingly, the trial court erred by denying defendant's motion for summary disposition.

---

[4] Plaintiff does not advance any argument on appeal that there were special aspects that would remove the hazard from application of the open-and-obvious doctrine.

[5] Contrary to plaintiff's argument, this conclusion is not based the mere fact that the fall occurred on a winter day in Michigan but is instead properly based on considering the actual indicia of the potential for hazardous icy conditions. See *Jeffrey-Moise*, 336 Mich App at 633-635; see also *Hoffner*, 492 Mich at 463-464 (stating that although it is not true that ice and snow hazards are always obvious and may not be a basis for liability under any circumstances, "it is also well established that wintry conditions, like any other condition on the premises, may be deemed open and obvious").

To the extent plaintiff relies on Sokana's testimony that he did not observe any dangerous conditions that morning to argue that there was a question of fact regarding whether the condition was open and obvious, plaintiff's argument is unavailing because the test for determining if a hazard is open and obvious "is objective, and the inquiry is whether a reasonable person in the plaintiff's position would have foreseen the danger, not whether the particular plaintiff knew or should have known that the condition was hazardous." *Slaughter*, 281 Mich App at 479. Additionally, plaintiff's focus on whether Sokana salted the area on the morning of the falling is misplaced because demonstrating that a defendant did not see black ice or failed apply deicer to an area does not negate the open and obvious nature of such a condition when, as in the instant case, there are sufficient other indicia of the potentially hazardous condition. *Jeffrey-Moise*, 336 Mich App at 633-635.[6]

Accordingly, viewing the evidence in a light most favorable to plaintiff as the non-moving party, the record evidence indicates that the condition was open and obvious because there were sufficient indicia of a potentially hazardous icy condition that an average user of ordinary intelligence could reasonably be expected to discover the condition. *Hoffner*, 492 Mich at 461; *Jeffrey-Moise*, 336 Mich App at 635. The trial court erred by denying defendant's motion for summary disposition. We reverse and remand this matter for entry of an order granting summary disposition in favor of defendant and dismissing this action.[7]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Defendant having prevailed may tax costs. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Stephen L. Borrello

---

[6] Plaintiff's arguments about the relevancy of the purportedly missing pre-fall video footage that would have allegedly shown whether Sokana actually salted the area are thus also misguided. *Jeffrey-Moise*, 336 Mich App at 633-635.

[7] In light of this conclusion, it is unnecessary to address defendant's causation and notice arguments because the conclusion that defendant is entitled to dismissal of the action based on the open-and-obvious rule renders these other issues moot. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).